UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAUL D. GIBBS,

                        Petitioner,                      Case No. 1:16-cv-570

v.                                              Honorable Robert Holmes Bell

WILLIE SMITH,

                        Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006).  After undertaking the review required by Rule 4, I conclude that the petition is barred by the one-year statute of limitations.

## Discussion

I.      Factual Allegations

Petitioner Paul D. Gibbs is incarcerated at the Ionia Correctional Facility.  The Michigan Court of Appeals provided a concise description of the circumstances surrounding Petitioner's crime:

> The victim, Tammie Dubay, a paraplegic, was defendant's girlfriend.  In the early morning hours of July 14, 2004, a surveillance camera captured defendant arriving at and, a short time later, departing from Dubay's apartment complex.  At approximately 4:45 a.m., the victim's mother, Margaret Dubay, received a telephone call from her granddaughter, Crystal, the victim's seven year-old daughter. Crystal tearfully told Margaret that Dubay was gone.  Crystal explained that she had seen defendant lift Dubay from her wheelchair and carry her to his pickup truck. Margaret immediately drove over to Dubay's apartment. Shortly thereafter, defendant, wearing a leather coat, along with gloves and a hat, appeared at Dubay's apartment.  After claiming that Dubay was with [a] friend, who was unknown to either Crystal or Margaret, and that he would get her, he quickly left. Margaret never heard from or saw defendant again that day.  Later that evening, Dubay's body, covered by a blanket, was found on the side of Cornell Road. She had been strangled by her wheelchair's power cord.

*People v. Gibbs*, No. 274003, 2008 WL 4149033, at *1 (Mich. App. Sept. 9, 2008) (herein *Gibbs I*). On May 31, 2006, following a jury trial in Ingham County Circuit Court, Petitioner was convicted of first-degree premeditated murder in violation of MICH. COMP. LAWS § 750.316(1)(a).  The court sentenced Petitioner to life imprisonment without parole.

Petitioner appealed his conviction to the Michigan Court of Appeals.  He raised these issues[1]:

---

[1]The statement of issues here is taken from Petitioner's handwritten petition (ECF No. 1, PageID.8-9).  He did not supply the brief from his direct appeal to corroborate his statement of the issues.  The opinion of the Michigan Court of Appeals reveals that the court considered the issues Petitioner has identified.  Because the Michigan Court of Appeals did not analyze the issues from a federal constitutional perspective, it is simply unclear whether Petitioner raised the issues as federal constitutional issues or whether the Michigan court considered them in the form he presents in his petition.  Indeed, the Court of Appeals described the errors raised as "nonconstitutional error." *Gibbs I*, at *4.  Moreover, because issues 4 and 5 are presented as errors committed by the Michigan Court of Appeals, it is unlikely that Petitioner

1.      The trial court erred in admitting hearsay statements of Tammy Dubay [the victim].  The error and resultant prejudice was compounded by the failure to give a jury instruction limiting any of the statements to a proper purpose under Michigan Rule of Evidence 803(3).

2.      The trial court violated due process by admitting the prior statements of Louella Bibbins because the prior statements were inadmissible to impeach Ms. Bibbins.

3.      The prosecutor committed misconduct in closing argument by improperly invoking Louella Bibbins['] prior statement that was ostensibly admitted for purely impeachment purposes.

4.      The court erred in holding that the erroneous admission of damaging hearsay, the prior statements of Louella Bibbins, and prosecutorial misconduct alone and combined were harmless.

5.      The court erred in holding that the trial court did not abuse its discretion in admitting marginally relevant and highly prejudicial autopsy photographs at trial.

(ECF No. 1, PageID.8-9.)

The Court of Appeals issued its opinion on September 9, 2008.  The Court of Appeals agreed with Petitioner with respect to virtually all of his assignments of error.[2]  The Court of Appeals affirmed the conviction, however, because it concluded the other evidence of Petitioner's guilt was so overwhelming that the evidentiary and argument errors were harmless. *Gibbs I*, at *4-6.  The court of appeals described that evidence in some detail:

In the days immediately preceding her death, Dubay informed others that she was afraid of defendant. Defendant was seen by Crystal[, the victim's seven-year-old daughter,] carrying Dubay out of the apartment and into his pickup truck, and a surveillance camera captured defendant in the parking lot of the apartment complex in which Dubay lived in the early morning hours of July 14, 2004. While the camera captured numerous vehicles entering and leaving the parking lot, defendant was the

_____

presented them in that form to the Michigan Court of Appeals.  The Court of Appeals also considered the issue of ineffective assistance of trial counsel, even though that issue is not identified as a direct appeal issue in the petition.

[2]The Court of Appeals disagreed with Petitioner on his challenge to the admission of the autopsy photographs and his claims that his trial counsel rendered ineffective assistance.  *Gibbs I*, at *6-7.

only person seen walking toward Dubay's apartment. Later that morning, defendant returned to Dubay's apartment wearing a coat, gloves, and a hat, which, according to Margaret, were inappropriate for the weather. Defendant, during his conversation with Margaret regarding Dubay's whereabouts, was "edgy" and "wanting to leave real fast." He told Margaret that he would get Dubay from the residence of an unknown friend, but he instead left the state.

In addition, forensic evidence established that, although 99.16 percent of the Caucasian population could be excluded as the donor of DNA found on the cord wrapped around Dubay's neck, defendant could not be excluded as the donor of the DNA. Also, paint chips, which consisted of three layers of paint, were taken from defendant's pickup truck and each layer matched paint chips found in the blanket that covered Dubay's body. Because the three-layered paint chips were "so unusual," it was the opinion of the prosecution's forensic expert that the paint chips found in the blanket originated from defendant's pick-up truck. Further, in the parking lot of Haslett Community Church, the location where the police believe Dubay was killed, a police officer located a pack of red Pall Mall cigarettes and a Virginia Slims cigarette butt. Defendant smoked both Paul Mall and Virginia Slims cigarettes. Moreover, defendant, when questioned by Nagy, admitted that he called Bibbins on the afternoon of July 14, 2004, and that he had mentioned to her that Dubay was dead. He changed his explanation for his knowledge of Dubay's death from it being all over to news to him just having a "bad feeling" when Nagy informed him that the telephone conversation occurred before the police found Dubay's body.

Finally, Robert Jacobson and Thomas Russell, two men with whom defendant was incarcerated, testified that defendant had told them, on separate occasions, that he had strangled his girlfriend. Margaret Lumbert, a corrections officer, overheard part of the conversation between Russell and defendant. When Russell asked defendant if had really done it, defendant replied yes. Lumbert interpreted defendant's answer to mean that he had killed his girlfriend.

*Gibbs I*, at *5-6.

Petitioner sought leave to appeal to the Michigan Supreme Court. That Court denied leave by order dated April 3, 2009.[3]

---

[3]Chief Justice Kelly dissented from the order denying leave. She would have granted leave "to consider whether, in this case, this Court, should condone as harmless error the prosecutor's deliberate injection of inadmissible evidence and misuse of nonsubstantive prejudicial evidence." *People v. Gibbs*, 763 N.W. 2d 280, 283 (Mich. 2009) (herein *Gibbs II*).

Petitioner's description of the procedural history after the conclusion of his direct appeal is muddled.  Petitioner claims he filed a request for relief under MICH. CT. R.  6.500 et seq. in the trial court during May of 2012.  Petitioner does not disclose the issues raised in this motion. It appears he may have raised the same issues he raised on his direct appeal: "Grounds raised: . . . it was basically denial of appeal of right . . . ."  (ECF No. 1, PageID.3.)

The docket of the Ingham County Circuit Court indicates that Petitioner's first Rule 6.500 motion was filed on July 10, 2012.  The court denied relief by opinion and order dated November 6, 2012.  Petitioner did not appeal the Ingham County Circuit Court's denial because, he alleges, he was not made aware of the denial until 2014.  The time for Petitioner to timely appeal the denial expired six months after the order was entered:  May 6, 2013.  *See* MICH. CT. R.  7.205(G)(3), 6.509(A).

Petitioner indicates that he filed a request for DNA testing and a successive motion under MICH. CT. R.  6.502 during June of 2014.  The DNA motion was denied by order dated May 12, 2015.  A review of the docket discloses that Petitioner, in the months after he filed his motion for further DNA testing, filed literally dozens of letter motions and requests directed to a variety of issues, including at least some of the issues he raises in this petition.  The trial court, however, addressed only the DNA motion in its initial order.

The trial court's May 12, 2015 order prompted a new flurry of letter motions by Petitioner.  By order dated June 16, 2015, the court resolved any remaining issues raised by Petitioner.  The court stated:

Defendant now seeks an additional opportunity to present various issues to this Court after many opportunities have already been given. While there is no final time limitation, courts do not look with favor upon a delayed motion for new trial. *People v Johnson*, 383 Mich 305, 310; 192 NW2d 482 (1971). *People v Fournier*, 86 Mich App 768, 786; 273 NW2d 555 (1978). This Court finds no reason to grant Defendant's motion at this late date, particularly in light of the numerous opportunities already provided by all the Michigan Courts for the defendant. Further, this Court will not entertain any further motions by Defendant pertaining to this specific matter.

*People v. Gibbs*, Docket No. 04-1541-FC (Ingham Cty. Circuit Ct., June 16, 2015). The court noted that the case would be considered closed and no further review allowed.[4]

In his various requests for relief filed in the trial court beginning in June of 2014, Petitioner raised several issues. Petitioner claims those requests included all of the issues he now raises in his habeas petition:

1.      The state used false DNA evidence to arrest, prosecute and convict.

2.      Ineffective counsel failed to obtain Speckin Labs review of DNA evidence and all of counsel's files burned up in a fire.

3.      Eyewitness identification is contrary to newly discovered evidence.

4.      Prosecutor committed and suborned perjury as to weather conditions.

5.      Use of a false timeline, altered videos by prosecutor to support a false identification.

6.      Jailhouse informant Robert Jacobson committed wholesale perjury.

7.      Prosecutorial misconduct in post-trial prosecution of Louella Bibbins for her refusal to follow prosecutor's plan for her to implicate Petitioner.

8.      Use of Petitioner's parole officer to implicate Petitioner was out of context and a product of manipulation and unlawful.

---

[4]The restriction on review was limited to review in the trial court. Petitioner applied for leave to appeal, first in the Michigan Court of Appeals, and then the Michigan Supreme Court. Those courts denied the applications on November 16, 2015 and May 2, 2016, respectively.

Petitioner represents that he raised all of these issues in connection with his 2014 motion in the trial court and in both subsequent applications for leave to appeal in the Michigan appellate courts. He does not provide his trial court or his appellate filings to permit the Court to assess that representation, but the docket entries indicate that at least some of the issues raised here were before the trial court by way of Petitioner's correspondence to the court.

Petitioner filed his application on or about May 20, 2016.[5]

## II. Statute of Limitations

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 (AEDPA). Section 2244(d)(1) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[5]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner indicates the petition was handed to prison officials for mailing on May 20, 2016.

- 7 -

28 U.S.C. § 2244(d)(1). . "The subsection . . . provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate)." *Pace v. DeGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

In every case the court must determine the date provided by § 2244(d)(1)(A), and then evaluate whether it is later than the dates provided by subparagraphs (B), (C), or (D) if those subparagraphs are applicable to one or more of the claims raised in the application.  Petitioner contends that the state prevented him from filing his petition by unconstitutional action.  Thus, the Court must examine the date the state-created "impediment . . . [was] removed . . . ."   28 U.S.C. § 2244(d)(1)(B).  Petitioner also suggests that the testimony his parole officer (or, more likely,  the corrections officer) provided was rendered unconstitutional by the Supreme Court's subsequent decision in *Howes v. Fields*, 132 S. Ct. 1181 (2012).  Thus, the Court must examine whether the "new" right was made retroactively applicable to cases on collateral review and, if so, the date it was made retroactively applicable.  28 U.S.C. § 2244(d)(1)(C).  Additionally, Petitioner indicates that several of his habeas grounds are based on newly discovered evidence.  Accordingly, the Court must also examine the date the factual predicate of Petitioner's fourth habeas ground "could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

A.   Timeliness under § 2244(d)(1)(A)

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the

date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  According to Petitioner's application, Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on April 3, 2009. Petitioner did not petition for certiorari to the United States Supreme Court.  The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on July 2, 2009.

Petitioner had one year from July 2, 2009, to file his habeas application.  Petitioner filed on May 20, 2016. Obviously, he filed more than one year after the time for direct review expired.  Thus, absent tolling, his application would appear to be time-barred under § 2244(d)(1)(A).

Petitioner argues that his claims are not time-barred because the running of the statute was tolled, either by operation of the habeas statute or proper application of equitable doctrines, from July 2, 2009 through the date the Michigan Supreme Court rejected Petitioner's most recent appeal, May 2, 2016.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").  Petitioner's first application for post-conviction review was

pending from May of 2012[6] to November 6, 2012.[7]  The one-year period, however, had expired long

before Petitioner filed his motion.  The tolling provided by 28 U.S.C. § 2244(d)(2) can only serve

to pause a clock that has not yet fully run.  *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001).

Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of

limitations.  *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). Statutory tolling,

standing alone, is insufficient to avoid the time bar.

Perhaps anticipating that result, Petitioner invokes equitable doctrines to toll the

statute of limitations.   The one-year limitations period applicable to § 2254 is a statute of limitations

subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*,

572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).   A

petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Keenan*, 400 F.3d

at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).   The Sixth Circuit repeatedly has

cautioned that equitable tolling should be applied "sparingly" by this Court.   *See, e.g., Hall v.*

*Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d

781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009).  A petitioner

seeking equitable tolling of the habeas statute of limitations has the burden of establishing two

elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[6]Petitioner alleges he filed his motion during May of 2012.  The Ingham County Circuit Court docket suggests the motion was filed during July of 2012.  For purposes of this analysis, the Court will accept Petitioner's allegation.

[7]The Ingham County Circuit Court denied the motion by opinion and order dated November 6, 2012.  Petitioner never appealed that decision; therefore, that date is the last date his post-conviction motion was pending.  *See Quatrine v. Berghuis*, No. 14-1323, 2016 WL 1457878, at *2 (E.D. Mich. April 12, 2016) ("Because Quatrine did not file a timely appeal, or any appeal at all, of the denial of his motion for relief from judgment, the limitations period was not tolled after the state trial court denied his post-conviction motions . . . .") (citing *Evans v. Chavis*, 546 U.S. 189, 197 (2006)).

circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260.

Petitioner first claims that his own mental incompetence prevented him from timely filing a habeas petition. In *Ata v. Scutt*, 662 F.3d 736, 741-42 (6th Cir. 2011), the Sixth Circuit adopted the reasoning of an unpublished Sixth Circuit decision, *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008), holding that mental incompetence is an extraordinary circumstance within the meaning of *Holland*, 130 S. Ct. at 2560. *Ata*, 662 F.3d at 742. To prove that mental incompetence should toll the statute of limitations, a petitioner must demonstrate that (1) he is mentally incompetent, and (2) his incompetence caused his failure to comply with the AEDPA statute of limitations. *Id.* "[A] blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." *Ata*, 662 F.3d at 742.

Petitioner alleges that his mental illness is clinically diagnosed to be manic depression. He takes medication for his condition. He indicates that he is not "insane, crazy [or] stupid"[;] rather, sometimes he is too optimistic and sometimes he is too depressed to move. (ECF No. 1, PageID.13.) For some period of time during 2009 and 2010, Petitioner's condition was severe enough to warrant confinement in a mental facility. (*Id*. at PageID.14.) Petitioner does not provide any detail as to the nature of that confinement or how the confinement or his condition caused his failure to comply with the statute of limitations. His allegations, therefore, fail to demonstrate his incompetence or how his incompetence caused his failure to timely file. Accordingly, Petitioner is not entitled to equitable tolling based on mental incompetence.

Even accepting as true Petitioner's unsupported statement that his confinement in a mental facility precluded his compliance with the AEDPA statute of limitations, that confinement ended at some point in 2010. Petitioner acknowledges that at some point in 2010 he was able to seek the necessary records and begin the search for evidence of his innocence. (ECF No. 1, PageID.15.) Accordingly, even if Petitioner's mental incompetence tolled the statute during his confinement, more than one year passed between the end of that confinement and the filing of his first post-conviction motion in the state court. Tolling on the ground of mental incompetence does not render the petition timely.

Petitioner claims that he faced another barrier in that he is unschooled in the law and was unable to file without legal assistance, assistance that was not available to him. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing.").

Finally, Petitioner offers a third barrier to his timely filing: the state actors (the prosecutor and the police) have withheld the evidence necessary to support Petitioner's claims. These claims are discussed in connection with the assessment of timeliness under § 2244(d)(1)(B) and (D) below.

B.      Timeliness under § 2244(d)(1)(B)

Under § 2244(d)(1)(B) the one-year limitations period does not run when there exists an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" and the Petitioner actually "was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). "Not only must the state impede the petitioner in some fashion, but also that obstruction must cause the untimely filing of the petition." *Colwell v. Tanner*, 79 F. App'x 89, 93 (6th Cir. 2003).

Petitioner contends that the prosecutor impeded the filing of his habeas petition by withholding exculpatory evidence in violation of the prosecutor's obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In order to establish a *Brady* claim, Petitioner must demonstrate that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt.  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Moore v. Illinois*, 408 U.S. 786, 794-95 (1972).  Petitioner bears the burden of establishing each of these three elements.  *See Carter*, 218 F.3d at 601.

Petitioner identifies several categories of "withheld" evidence: the "DNA file"[8] from the Michigan State Police  (ECF No. 1, Page.ID 21) relating to habeas ground 1; the inconsistent statement from an eyewitness obtained by Officer  Michelle Schlaack (or perhaps Officer Barbara Krause or some other East Lansing Police officer) (ECF No. 1, PageID.24) relating to habeas ground

---

[8]Petitioner alternatively describes the file as the "State Police Crime Lab file."  (ECF No. 1, PageID.15.)

3; and statements and written correspondence of jailhouse informant Robert Jacobson (ECF No. 1, PageID.28) relating to habeas ground 6.

1.       The DNA file

Petitioner states that he "began to seek [his] records and search for evidence of [his] innocence" in 2010 when he was released from confinement in a mental health facility.  (*Id*. at Page.ID 15.)  He complains that the prosecutor's office, the court, the state police crime lab, the police, and his own trial and appellate counsel would not cooperate.  Petitioner does not describe the manner in which he sought the file or how the various non-cooperative offices and individuals failed to cooperate except as follows:

1.       Michigan State Police refused Petitioner the DNA file, year after year (ECF No. 1, PageID.34).

2.       Petitioner's trial lawyer did not provide the DNA file (or any other police or investigative reports) to Petitioner or his appellate counsel because the trial lawyer's files burned up in a fire in 2005 (*Id*. at PageID.32).[9]

Petitioner alleges he eventually acquired the file with the assistance of an attorney in 2014.  (*Id*. at Page.ID 15.)

According to Petitioner, the contents of that file prove that the DNA evidence introduced against him at trial was false.  (*Id*, at PageID.21.)  Petitioner does not describe the content or how it establishes his innocence, nor does he attach any of the file contents to his petition, so it is impossible to assess the accuracy of his conclusory allegations regarding the exculpatory character of the evidence.  Nonetheless, Petitioner seems to suggest that the testimony of the forensic expert at trial was inconsistent with the expert's own written report.  A review of the report indicates

---

[9]Petitioner's statement with regard to the files destroyed by fire is confusing.  He indicates his trial attorney lost the files to fire in 2005, but Petitioner was not tried until April of 2006.

- 14 -

otherwise. The report, attached to the trial court's denial of Petitioner's motion for new DNA testing, is consistent with the evidence as referenced in the Michigan Court of Appeals opinion, particularly with regard to the presence of genetic material on the end of the power cord, the murder weapon. Thus, the evidence may not be exculpatory at all.

Moreover, Petitioner cannot succeed in demonstrating that this evidence, the expert's testimony and report, were suppressed by the prosecutor. To the contrary, the evidence was central to the prosecutor's case. Even if Petitioner was unaware of the evidence going into his trial, he was certainly made aware of it at trial. Indeed, Petitioner indicates that "the DNA file" was part of the materials that allegedly burned in the fire at his attorney's office in 2005. (ECF No. 1, PageID.32.) Therefore, Petitioner has failed to show that his untimely filing of this habeas claim was caused by the prosecutor's suppression of the DNA file.

2.     Inconsistent statement from the eyewitness

Petitioner's third habeas ground also relies on the allegedly unconstitutional concealment of information by the prosecutor. Petitioner states "[t]he prosecutor concealed Officer Michelle Schlaack, Barbara Krause and other East Lansing Police to prevent [the] eyewitness['s] first statement from coming out . . . ." (ECF No. 1, PageID.24.) It is not clear whether Petitioner complains that the identities of the police officers were concealed or that the first statement was concealed. He indicates "[i]t only came to light [the eyewitness] gave a statement to Officer Schlaack that conflicts in 2014 and 2015." (*Id*.) He provides no detail to permit the Court's assessment of the exculpatory or impeaching character of the evidence, whether the prosecutor concealed it, or how Petitioner became aware of it. Accordingly, Petitioner has failed to demonstrate that the state unconstitutionally impeded the timely filing of this habeas claim.

- 15 -

3.      Statements by the jailhouse informant

Petitioner claims the prosecutor is withholding statements and written correspondence that will prove that the "jailhouse informant," a fellow prisoner who testified regarding Petitioner's acknowledgment that he committed the crime, was given favors and leniency in exchange for his testimony.  Petitioner indicates he discovered evidence with regard to the jailhouse informant in 2010 (ECF No. 1, PageID.34.)  With regard to that issue, therefore, the statute of limitation began to run at some time in 2010 and expired before Petitioner filed his initial post-conviction motion in 2012.

C.      Timeliness under § 2244(d)(1)(C)

Petitioner suggests that he could not have filed habeas ground 8, regarding an impropriety in the use of the testimony of Petitioner's parole officer, until the United States Supreme Court decision in *Howes v. Fields*, 132 S. Ct. 1181 (2012).  (ECF No. 4, PageID.65.)  In making that argument, Petitioner seeks to invoke the statute of limitations provided by § 2244(d)(1)(C).  That provision applies where the Supreme Court has recognized a new constitutional right.  Under that circumstance, the statute of limitations does not begin to run until the date the right is recognized. 28 U.S.C. § 2244(d)(1)(C).

Petitioner's argument is fundamentally flawed for two reasons.  First, *Howes v. Fields* did not recognize a new constitutional right.  Second, even if Howes recognized a new constitutional right, Petitioner's claim would not be timely because Petitioner did not file his petition within one year of the date the Supreme Court decided *Howes*.

- 16 -

D.        Timeliness under § 2244(d)(1)(D)

The habeas statute of limitations may also be extended where the Petitioner relies on "newly discovered" evidence. Section 2244(d)(1)(D) provides that the time the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts. *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003)). "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. *Id.* (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999))." *Id.* "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant application of § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he

took to discover the claims).   The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

Virtually all of Petitioner's habeas claims rely on purportedly "new" evidence: ground 1, the DNA file; ground 2, the destruction by fire of the trial attorney's files; ground 3, the prior inconsistent statement by the eyewitness; ground 4, the weather reports[10]; ground 6, the jailhouse informant's statements; and ground 7, the vindictive prosecution of Louella Bibbins.  With regard to grounds 2 (discovered in 2012), 6 (discovered in 2010), and 7 (discovered in 2012), by Petitioner's own allegations, more than one year passed after he "discovered" the factual predicate for his claim before he filed his petition.  Accordingly, application of a later statute commencement date under § 2244(d)(1)(D) would not render them timely.

The evidence at issue in grounds 1 and 3 is similarly not "new" enough to render his claims timely. Although the contents of the DNA file have recently come into Petitioner's possession again, they are not newly discovered.  His allegations reveal that the DNA file existed in his attorney's possession before his trial.  Similarly, although Petitioner may have recently come into possession of "certified" weather reports, weather data is readily available.

The issue is not as easily resolved with regard to the alleged prior inconsistent statement of the eyewitness, the evidence at issue in ground 4.  Petitioner does not provide sufficient information with regard to the nature of the evidence, the nature of his efforts to find the evidence, or how and when he discovered the evidence.  These shortcomings, however, do not render

---

[10]Petitioner claims he was only recently (November, 2014) able to get certified weather reports to prove that the prosecutor suborned perjury in pursuing questions regarding the weather on the date of the murder. The weather was material because the murder occurred on July 14 yet Petitioner wore a leather coat and gloves.

Petitioner's claim timely.  He has simply failed to demonstrate that § 2244(d)(1)(D) is applicable to his ground 4 evidence or that the statute would operate to render the claim timely.

III.    Actual innocence

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 1936.

In the instant case, although Petitioner baldly claims that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable jury would have convicted him. *Schlup*, 513 U.S. at 329.  Because Petitioner has wholly failed to provide evidence of his actual innocence, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His habeas petition therefore is time-barred.

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day,* 547 U.S. at 210.  This report and recommendation shall therefore serve as notice that the District Court

may dismiss Petitioner's application for habeas corpus relief as time-barred.  The opportunity to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard by the District Judge.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated: July 12, 2016                      /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).